SANTO MUSUMECI *et ux. vs.* VINCENZO LEONARDO *et ux.*

JULY 13, 1950.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J. This is a bill in equity to enjoin the maintenance of an alleged "spite fence." After a hearing on bill, answer and oral proof in the superior court a decree was entered denying and dismissing the bill of complaint. From that decree complainants have appealed to this court.

Complainants have briefed and argued their appeal on the assumption that equity will enjoin the maintenance of a fence which was erected by respondents on their own land with the intent to deprive an adjacent owner of access to light and air. In the course of their discussion they have cited and quoted from a number of authorities which, they assert, fully warrant that assumption. They also argue that this power is a part of the traditional jurisdiction of courts of equity to abate private nuisances and hence is not affected by a statute which grants a different remedy.

Fundamentally, the question raised by the appeal is whether a fence erected on one's own land with the intent to deprive an adjacent landowner of light and air is a private nuisance which equity will enjoin. Such a fence is popularly called a "spite fence." In this state, by virtue of general laws 1938, chapter 645, §20, a fence substantially of that character is deemed a private nuisance and one injured thereby is expressly given a right of action at law for damages. In the case at bar the trial justice did not think that the facts brought complainants within the statute, but if it did the remedy was at law and not in equity. Complainants now contend that the trial justice erred because that statute does not expressly, and therefore was not intended to, exclude the traditional jurisdiction of equity to abate private nuisances. Moreover, they argue that since the fence in question here is not of the height prescribed by that statute such remedy is not available to them and hence, for this reason also, the trial justice erred. In short they insist that the motive or intent with which respondents erected the fence establishes it in equity,

aside from statute, as a private nuisance which may be enjoined.

The evidence shows that respondents' land is higher than complainants' land. On the boundary there is a cement retaining wall which is about six feet from complainants' house and varies in height from five to seven feet. At its highest point it is about on a level with the top of the lower sash of the windows on the first floor and at its lowest point is about level with the bottom of such window sash. About two feet from this wall on their own land and parallel to the whole side of complainants' house facing the wall respondents have erected a board fence varying in height from five feet four inches to five feet six inches. Some of the posts, however, are as high as six feet, but none of the boarding is of that height. The fence is considerably higher than the top of the windows on the first floor. This admittedly blocks the view from such windows, darkens the rooms on that floor, and cuts off air.

Respondent Vincenzo Leonardo erected the fence as a result of an altercation with complainants' daughter, Mrs. Anna Fascitelli, in the summer of 1948 which arose in the following manner. It seems that on several occasions during that summer respondent while watering his garden had allowed water to go beyond into complainants' premises and through the open windows of Mrs. Fascitelli's apartment on the first floor which damaged her wallpaper and curtains and caused puddles on her rugs. She testified that she complained to him about this but that he ignored such complaints. As a result, ill feeling grew up between them, and finally Mrs. Fascitelli called respondent a vile name. Whereupon, according to Mrs. Fascitelli, the respondent said: "* * * I will fix you. I will build a fence so high I won't let you see no light and no sun any more." The respondent, however, testified that he erected the fence to protect his interests and so that no water would go over the wall when he was watering his garden, and also to keep children out of his garden and off the wall.

It is obvious from the testimony presented by both sides that the fence itself does not exceed six feet in height nor does the wall and fence together, in our opinion, constitute a "structure in the nature of a fence." The wall was built by complainants and is apparently a necessary structure for the mutual benefit of the adjacent proprietors, as it is intended to preserve as nearly as possible the natural contour of the land by holding in place the upper proprietor's soil, thus preventing it from eroding and being cast upon the lower proprietor's land. In itself the wall is not a fence nor does it form any part of the actual board fence which respondents have erected on their own land. This being so, chap. 645, §20, is not applicable as is clearly evident from its language which is as follows: "A fence, or other structure in the nature of a fence, which unnecessarily exceeds 6 feet in height, and is maliciously erected or maintained for the purpose of annoying the owners or occupants of adjoining property, shall be deemed a private nuisance, and any such owner or occupant who is injured, either in the comfort or enjoyment of his estate thereby, may have an action of trespass on the case to recover damages for such injury."

We agree, therefore, with complainants that this statute does not make available to them a remedy at law which would preclude them from relief in equity by injunction, if they are otherwise entitled to that equitable remedy. Hence if the trial justice's decision denying and dismissing the bill of complaint were dependent for its correctness solely on the ground that complainants had a remedy at law by virtue of that section, it would be erroneous. However, we are of the opinion that it can be supported on other grounds.

First, the complainants' evidence does not show that respondents erected and now maintain their fence solely out of unmixed malice toward the complainants. Even the testimony of Mrs. Fascitelli herself tends to show that there was a good reason for some such barrier as the board

fence to prevent water from entering her premises when respondent watered his garden. Whether it is effective for that purpose is not important here. The close proximity of the complainants' house to the wall, a matter of a mere six feet, plus the fact that the garden was more than five feet above the level of their lot made it likely that some water might escape from time to time to the complainants' lot below and occasionally enter the open windows of the first floor of their house. That is enough to show that the fence in question can and does perform a useful purpose regardless of the motive for its erection. So that even under the law as laid down in *Burke* v. *Smith,* 69 Mich. 380, relied on by complainants, this fence could not, on the evidence here, reasonably be said to be wholly malicious and, therefore, not enjoinable as a "spite fence" within the meaning of that case.

The authorities cited by the complainants in addition to the *Burke* case hold that the maintenance of such fences may be enjoined if the alleged malice of the respondents is unmixed with an otherwise useful purpose or benefit to them which the fence will reasonably subserve. 133 A.L.R. 692, Anno. The *Burke* case at page 388 states the rule to be "that no man has a legal right to make a malicious use of his property, *not for any benefit or advantage to himself,* but for the avowed purpose of damaging his neighbor." (italics ours) See also 22 Am. Jur., Fences, §43, where it is stated that "Some authorities take the view that a fence erected maliciously and with no purpose other than to shut out light and air from a neighbor's window is a nuisance." A similar statement of the law is to be found in Joyce, Law of Nuisance, §37. Tested by those statements the fence in question here is not subject to injunction as a private nuisance.

The decree denying and dismissing the bill is correct, however, for another and stronger reason than those already stated. In this state a fence erected on one's own land for the purpose of shutting off light and air to an adjacent

owner is not unlawful unless it violates G. L. 1938, chap. 645, §20. Hence the maintenance of such a fence cannot be enjoined in equity as a private nuisance. It is not a nuisance. In order to be such it would have to violate some right of the adjacent landowner. Under the common law as it is generally applied in America an adjacent proprietor has no right to light and air coming to him across the land of his neighbor. *Trustees Mathewson Street M. E. Church* v. *Shepard,* 22 R. I. 112.

The gravamen of the instant bill of complaint is that respondents have maliciously deprived them of light and air. But if complainants have no right to such light and air, of what does the alleged nuisance consist? They answer: the malice which motivated respondents in erecting the fence. In support of their position they argue that such malicious conduct is a clear violation of that ancient maxim of the law, *sic utere tuo ut alienum non laedas.* Their contention to this effect is borne out by the authorities which they cite, but we think it an unwarranted extension of the maxim. So use your own as not to injure another's property is, indeed, a sound and salutary principle for the promotion of justice, but it may not and should not be applied so as gratuitously to confer upon an adjacent property owner incorporeal rights incidental to his ownership of land which the law does not sanction.

A landowner has no right to the light and air coming to him across his neighbor's land. True, if the light and air be shut off damage may well result to his property for residential purposes, as is alleged here, but it is *damnum absque injuria.* It is damage which the law does not recognize because there is no injury. Where there is no right, a deprivation works no injury. The motive with which the deprivation is caused may well be a wrong but it is a moral wrong too subtle for the law to recognize. And where such recognition is attempted the probabilities of working an injustice to the other landowner are real.

The municipal law regulates the conduct of men in their

relations with each other and affords redress where the established civil right of one has been violated by another. Violations of ethics or morals which do not harm the public weal, it wisely leaves to the sanctions of the moral law. At that bar only can the motives of men be fully appraised and fairly judged. Positive law can only approach that ideal of perfect justice when it declares that one may not do what he will with his own to the injury of his neighbor. And so where one uses his property in such a manner as to cast noxious odors, smoke, or other deleterious substances over the land of his neighbor to his injury the law deems such conduct a nuisance in violation of the obligation formulated in that maxim.

This court has applied that concept where one used his property for otherwise legitimate purposes but in such a way that it constituted an annoyance to his neighbors and a potential danger to their property on account of the vibrations caused by the nature of the industrial work being done on his property. *Blomen* v. *N. Barstow Co.,* 35 R. I. 198. Complainants cite such case in support of their position here. The difficulty is that their case in no way resembles that case on its facts. The facts in evidence in the *Blomen* case properly called for the application of the maxim, as well-established rights belonging to the complainants there were being violated. In the case at bar complainants have no such rights.

Respondents cite a "spite fence" case from Ohio in which this difference is expounded in considerable detail. *Letts* v. *Kessler,* 54 Ohio 73. Without adopting all that was there said we nevertheless approve the reasoning therein which distinguishes a case, such as the instant one, involving a deprivation of light and air from cases involving smoke, gas, noisome smells or noises. As that court well remarked at page 82: "In such cases something is produced on one's own premises and conveyed to the premises of another; but in this case nothing is sent, but the air and light are

withheld." See also *Rideout* v. *Knox,* 148 Mass. 368; *Keats* v. *Hugo,* 115 Mass. 204; *Giller* v. *West,* 162 Ind. 17.

The complainants' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Arcaro, Carty & Belilove, Samuel J. Kolodney,* for complainants.

*Ralph Rotondo, Michael Addeo,* for respondents.